# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: IH 1, Inc., *et al.*, | : | CASE NO. 09-10982-PJW |
| | : | |
| Debtors | : | |
| | : | |
| GEORGE L. MILLER, | : | |
| Chapter 7 Trustee, | : | ADVERSARY NO. 12-50713-PJW |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KIRKLAND & ELLIS LLP, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF
## KIRKLAND & ELLIS LLP'S MOTION TO STAY

        Seth A. Niederman (No. 4588)
        Maura L. Burke (No. 5313)
        919 N. Market Street, Suite 1300
        Wilmington, Delaware 19801-3045
        Tel: (302) 654-7444/Fax: (302) 656-8920

        and

        Abraham C. Reich (admitted pro hac vice)
        Peter C. Buckley (admitted pro hac vice)
        2000 Market Street, Twentieth Floor
        Philadelphia, Pennsylvania 19103-3222
        Tel: (215) 299-2090/Fax: (215) 299-2150

        Attorneys for Defendant
        Kirkland & Ellis LLP

Dated: March 10, 2014

## TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF PROCEEDING ................................................................................ 1

II. SUMMARY OF ARGUMENT .................................................................................................... 2

III. STATEMENT OF FACTS ........................................................................................................... 3

    A. February 2, 2006—Sun Capital Acquires Indalex. ............................................... 3

    B. February 2, 2006—Indalex Retains Kirkland. ..................................................... 3

    C. June 1, 2007—Indalex Declares A Dividend. ...................................................... 4

    D. March 20, 2009—Indalex Files Bankruptcy. ....................................................... 4

    E. July 30, 2010—Plaintiff Sues Sun Capital. .......................................................... 5

    F. May 14, 2012—Plaintiff Sues Kirkland. .............................................................. 5

IV. ARGUMENT ............................................................................................................................... 7

    A. A Stay Will Simplify The Issues In Question And Trial Of The Case. ................ 7

    B. A Stay Will Not Prejudice Plaintiff. ................................................................... 10

    C. Discovery Is Far From Complete And The Court Has Not Set A Trial Date. .... 11

V. CONCLUSION .......................................................................................................................... 11

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Bechtel Corp. v. Local 215, Laborers' Int'l Union of North Am., AFL-CIO,
    544 F.2d 1207 (3d Cir. 1976) ..................................................................................8

Cargill, Inc. v. JWH Special Circumstance LLC,
    959 A.2d 1096 (Del. Ch. 2008) ................................................................................8

Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.,
    2004 WL 1554382 (D. Del. May 13, 2004) ...........................................................10

Cost Brothers, Inc., v. Travelers Indem. Co.,
    760 F.2d 58 (3d Cir. 1985) ......................................................................................7

Enhanced Security Research LLC v. Juniper Networks Inc.,
    2010 WL 5420147 (D. Del. Dec. 27, 2010) .............................................................7

Ethicon, Inc. v. Quigg,
    849 F.2d 1422 (Fed. Cir. 1998) ...............................................................................7

First Am. Title Ins. Co. v. MacLaren, L.L.C.,
    2012 WL 769601 (D. Del. Mar. 9, 2012) .......................................................7, 9, 11

In re Fedders North America, Inc.,
    405 B.R. 527 (Bankr. D. Del. 2009) ........................................................................8

Landis v. North Am. Co.,
    299 U.S. 248 (1936) .................................................................................................7

WaveDivision Holdings, LLC v. Highland Capital Management L.P.,
    2010 WL 1267126 (Del. Super. Mar. 31, 2010) ......................................................8

**STATUTES**

28 U.S.C. § 2201 ............................................................................................................9

I.   **NATURE AND STAGE OF PROCEEDING**

In this adversary proceeding, the Chapter 7 Trustee for Indalex, claims that Kirkland & Ellis LLP ("Kirkland") aided and abetted Indalex's board to breach its fiduciary duties when Kirkland provided legal advice regarding a $76 million dividend that Indalex declared in 2007—nearly two years before it filed for bankruptcy. Plaintiff further claims that Kirkland failed to disclose a conflict of interest to Indalex when it acted as Indalex's counsel.

This is not plaintiff's only lawsuit seeking to claw back the dividend. In fact, almost two years before he filed this lawsuit, plaintiff commenced a fraudulent conveyance action against Sun Capital Partners, Inc., certain of its affiliates that owned the majority of Indalex's shares, and Indalex's officers and directors. In that still-pending lawsuit, captioned <u>Miller v. Sun Capital Partners, Inc., et al.</u>, Adv. No. 10-52279 (Bankr. D. Del.) (the "Sun D&O Proceeding"), plaintiff seeks to claw back the $76 million dividend, recover management fees that Indalex paid to a Sun Capital affiliate, recharacterize certain loans as equity, and unwind certain sale leaseback transactions. The gist of plaintiff's claims there is that Indalex was insolvent when its board of directors declared the dividend in June 2007. Plaintiff filed the Sun D&O Proceeding in July 2010 and, at the time, was aware at the time that Kirkland advised Indalex's board when it declared the dividend. Nevertheless, he did not name Kirkland as a defendant. Plaintiff has litigated the Sun D&O Proceeding for over three and a half years, during which the parties exchanged thousands of documents and deposed numerous witnesses. Fact discovery in the Sun D&O Proceeding closed almost two years ago. Both sides also hired experts—including on the fact instensive (and hence costly) solvency question—to review Indalex's financial information and opine whether Indalex was solvent at the time of the dividend.

During the Summer of 2013, this Court denied defendants' motion for summary judgment as well as the parties' motions to exclude each other's experts. As a result, pending a

ruling from the District Court on plaintiff's motion to withdraw the reference, the Sun D&O Proceeding is ready for trial. By contrast, this case—against Kirkland—is not even close to trial ready. In fact, the parties have not even *started* deposition discovery.

The resolution of the Kirkland case depends in large part on whether Indalex was solvent at the time of the dividend—the same issue that is dispositive of the Sun D&O Proceeding. If it is determined in the Sun D&O Proceeding that Indalex was solvent, plaintiff's duty claims against Indalex's directors will fail and, as a result, his claim that Kirkland aided and abetted any breaches of fiduciary duty will also fail. Conversely, a ruling that Indalex was insolvent will crystallize the issues and streamline this derivative litigation. It does not make sense for the parties in this case to continue to expend time and resources when its entire landscape will be altered by an impending decision in the the Sun D&O Proceeding. For these reasons, and as articulated more fully below, Kirkland respectfully moves to stay this adversary proceeding to avoid duplicative fact and expert discovery related to the dividend and Indalex's solvency.

## II.    SUMMARY OF ARGUMENT

This Court should stay this case because a decision regarding Indalex's solvency in the Sun D&O Proceeding will greatly simplify (if not resolve) much of this case. The parties in the Sun D&O Proceeding have already completed discovery and the only thing left is for both sides to present their cases at trial. Moreover, a stay will not prejudice plaintiff because, if successful, he will certainly argue that he is entitled to receive prejudgment interest for the entirety of this action, including the stay period. Finally, this case is no where near trial ready. Compared to the Sun D&O Proceeding, which has been pending for more than three and a half years and is ready for trial, this case is in its infancy. Although the parties have exchanged documents, the parties have not started depositions, and the Court has not set a trial date. Where, as here, the resolution

of one case may obviate the need for the other, a stay is appropriate. A stay will also save the Court, Kirkland, and the bankruptcy estate from expending significant amounts of time and money on duplicative discovery that could well be moot.

### III.  STATEMENT OF FACTS

#### A.  February 2, 2006—Sun Capital Acquires Indalex.

In July 2005, Sun Capital Partners, Inc. (together with its affiliates, "Sun Capital"), a private equity firm, began to contemplate acquiring Indalex. At that time, Indalex owned a 25% interest in Asia Aluminum Group ("AAG"), an aluminum extrusion company located in China. (Ex. A, Sun D&O Compl. ¶ 113). Sun Capital acquired Indalex on February 2, 2006. (Compl., D.I. 1 at ¶¶ 1, 23). Sun Capital financed the purchase through an equity contribution, borrowings on a revolving bank loan, and senior subordinated notes. (Ex. A, Sun D&O Compl. ¶ 111). As part of the acquisition, Sun Capital disclosed to Indalex's creditors that Indalex might sell its interest in AAG and declare a dividend in the future. (Id. at ¶¶ 114-15). Indeed, both the credit agreement, which provided the terms for Indalex's revolving bank loan, and the bond indenture, which set forth the terms under which Indalex sold the subordinated notes, permitted Indalex to declare an AAG-related dividend. (Id.).

#### B.  February 2, 2006—Indalex Retains Kirkland.

The same day that Sun Capital acquired Indalex, Indalex retained Kirkland to render legal services. (Compl., D.I. 1 at ¶ 28). Indalex Holdings Finance, Inc., on behalf of itself, its subsidiaries, and affiliates, signed a written engagement letter with Kirkland outlining the relationship between Kirkland, Indalex, and its new parent, Sun Capital. (Id. at ¶¶ 28-29; Ex. B, 2/2/06 Engagement Letter). The engagement letter specifically advised Indalex that Kirkland

3

represented Sun Capital "on a variety of matters, including Sun's investment in [Indalex]" and anticipated that Kirkland would continue to represent Sun Capital in the future:

> As you know we have represented and represent Sun Capital Partners, Inc. and its affiliated investment funds and management companies (together "Sun") on a variety of matters, including Sun's investment in you and anticipate that we will represent Sun in future matters. You are a portfolio company of Sun. This confirms that K&E LLP has informed you of its representation of Sun on a variety of matters, including Sun's investment in you . . .

(Ex. B, 2/2/06 Engagement Letter at p. 4). The engagement letter also included an explicit waiver provision that encompassed past, present, and future conflicts arising from Kirkland's representation of Sun Capital. (Id.). Mike Alger, Indalex's Chief Finance Officer at the time, signed the engagement letter on behalf of Indalex. (Id. at 6). Douglas Gessner, a Kirkland partner, signed the letter on behalf of Kirkland. (Id.).

### C. June 1, 2007—Indalex Declares A Dividend.

Following its sale of AAG in May 2007 for $155.2 million, Indalex retained FTI Capital Services ("FTI"), a financial consulting firm, to confirm that Indalex could pay a dividend. (Ex. A, Sun D&O Compl. ¶ at 174). FTI completed its work and determined that Indalex would pass multiple solvency tests if it paid a dividend from the proceeds of the AAG sale. (Id.). On June 1, 2007, according to a formula set forth in the bond indenture and the revolving credit agreement, Indalex paid a $76 million *pro rata* dividend to its shareholders. (Compl., D.I. 1 at ¶¶ 3-5). In connection with the dividend, Kirkland advised Indalex on its obligations under applicable Delaware law, reviewed and commented on the language of FTI's solvency opinion, and prepared draft board resolutions approving the dividend. (Id.).

### D. March 20, 2009—Indalex Files Bankruptcy.

On March 20, 2009, nearly two years after Indalex declared the dividend, and, in one of the worst economic crises since the Great Depression, Indalex filed for bankruptcy protection

4

under Chapter 11 of the Bankruptcy Code. (Id. at ¶¶ 3, 5). On October 15, 2009, the Indalex bankruptcy was converted to a Chapter 7 case and George L. Miller was appointed as the Trustee. (Id. at ¶¶ 8-9). From that point (if not before), plaintiff knew of Kirkland's role as Sun Capital's counsel. As evidenced by a fee application filed by the Dilworth Paxson firm, plaintiff (and his lawyers) were negotiating with Krikland, as Sun Captial's counsel, from almost the moment they were appointed.

      **E.**      **July 30, 2010—Plaintiff Sues Sun Capital.**

On July 30, 2010, plaintiff filed a lawsuit against Sun Capital, certain former officers and directors of Indalex, and other shareholders who received a portion of the dividend (the "Sun D&O Proceeding"). (Ex. A., Sun D&O Compl.). The linchpin of the Sun D&O Proceeding is plaintiff's allegation that the June 1, 2007 dividend rendered Indalex insolvent. (Id. at ¶¶ 179, 193, 197). Additionally, plaintiff claims that the Indalex board of directors breached its fiduciary duties when it approved the dividend. (Id. at ¶¶ 248, 260). Plaintiff did not name Kirkland as a defendant in the Sun D&O Proceeding and never requested the deposition of any Kirkland attorney during discovery. Fact discovery in the Sun D&O Proceeding closed on May 1, 2012 and expert discovery has also concluded. Through that process, the parties fully developed the factual record regarding Indalex's solvency and both parties hired solvency experts who reviewed the facts and issued opinions regarding Indalex's solvency. The Court has also denied all dispositive motions and, as a result, the Sun D&O Proceeding is ready for trial.

      **F.**      **May 14, 2012—Plaintiff Sues Kirkland.**

Eight months after initiating the Sun D&O Proceeding, plaintiff requested that Kirkland enter into a Tolling and Standstill Agreement. (Compl., D.I. 1 at ¶ 38, n.6). Neither plaintiff nor Kirkland terminated the tolling agreement and it expired by its own terms on March 14, 2012.

5

On May 14, 2012, plaintiff filed this lawsuit against Kirkland. In Count I of his complaint, plaintiff claims that Kirkland "knowingly assisted [various Indalex] fiduciaries in violating their duties to Indalex" by "declaring a dividend which benefited them and rendered Indalex insolvent and/or was made at a time Indalex was already insolvent." (Compl., D.I. 1 at ¶¶ 48-49, 51). In Count II, plaintiff claims that Kirkland "was retained to advise Indalex on a number of legal issues including with respect to [the Dividend]" and that Kirkland "performed their services negligently and below the standard of reasonable care, skill and diligence expected of lawyers advising Delaware corporations on their obligations under applicable law including, but not limited to, Delaware law." (Id. at ¶¶ 54-62). Plaintiff further asserts that Kirkland failed to disclose to Indalex that certain Kirkland partners were passive investors in an investment fund, which, in turn, invested in an investment fund, which, in turn, invested in Indalex, and that the alleged non-disclosure of these investments amounts to a conflict of interest. (Compl., D.I. 1 at ¶¶ 28-37). Plaintiff asserts that this alleged conflict supports his claims in Count I and Count II.

To date, in response to plaintiff's document requests, Kirkland has produced over 24,000 documents totaling over 400,000 pages. Kirkland expects to complete its document production by March 14, 2014. Although plaintiff recently indicated his intent to depose ten Kirkland attorneys in this case (including a corporate designee on at least twelve enumerated topics) and requested dates for such depositions; all but one of whom were involved in Kirkland's representation of Sun Capital and/or Indalex and thus could have been deposed in the Sun D&O Proceeding, plaintiff has not yet issued any deposition notices. Because additional discovery will be largely duplicative of discovery that has already occurred in the Sun D&O Proceeding, Kirkland respectfully moves to stay this action to avoid the time, expense, and risk of inconsistent rulings inherent in relitigating the same issue in two different fora.

6

## IV. ARGUMENT

The power to stay a case is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel and for litigants." First Am. Title Ins. Co. v. MacLaren, L.L.C., 2012 WL 769601, at *4 (D. Del. Mar. 9, 2012) (citing Landis v. North Am. Co., 299 U.S. 248, 254 (1936). The power and authority to stay a pending matter lies within the discretion of the court. Id. (citing Cost Brothers, Inc., v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985)); see also Enhanced Security Research LLC v. Juniper Networks Inc., 2010 WL 5420147, at *1 (D. Del. Dec. 27, 2010) (citing Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1998)). Courts consider three factors when ruling on a motion to stay: (1) whether a stay will simplify the issues in question and trial of the case; (2) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; and (3) whether discovery is complete and whether a trial date has been set. See First American, 2012 WL 769601, at *4. Because all three factors favor a stay, this Court should exercise its discretion and enter a stay until, at a minimum, the fact finder in the Sun D&O Proceeding has determined whether Indalex was solvent when it declared the dividend.

### A. A Stay Will Simplify The Issues In Question And Trial Of The Case.

There can be no dispute that a stay will simplify the issues in question. Plaintiff's case against Kirkland is primarily premised on plaintiff's assertions that Kirkland aided and abetted the Indalex directors to breach their fiduciary duties to Indalex when they declared the dividend, and that Kirkland negligently advised Indalex that the dividend could lawfully be paid. Much of Kirkland's liability is therefore predicated on the same alleged wrongful acts at issue in the Sun D&O Proceeding—the alleged breach of fiduciary duty and the alleged illegal dividend. To

7

succeed on its claim for aiding and abetting, plaintiff must establish first that defendants in the Sun D&O Proceeding breached a fiduciary duty. See In re Fedders North America, Inc., 405 B.R. 527, 544 (Bankr. D. Del. 2009) (citing Cargill, Inc. v. JWH Special Circumstance LLC, 959 A.2d 1096, 1125 (Del. Ch. 2008). If plaintiff fails to prove a breach, plaintiff's aiding and abetting claim likewise must fail. See e.g. WaveDivision Holdings, LLC v. Highland Capital Management L.P., 2010 WL 1267126, *4 (Del. Super. Mar. 31, 2010) (noting that where the underlying claim is dismissed the claim of aiding and abetting will follow suit). The same is true with respect to plaintiff's claim that Kirkland negligently advised Indalex to pay an illegal dividend. See Bechtel Corporation v. Local 215, Laborers' International Union of North America, AFL-CIO, 544 F.2d 1207, 1215 (3d Cir. 1976).

Bechtel is instructive. There, Bechtel asserted a Section 301 and Section 303 claim against a union pursuant to the Labor Management Relations Act. *Id.* at 1209-10. The trial court ordered the parties to arbitrate the Section 301 claim and stayed the Section 303 claim during the pendency of the arbitration. *Id.* at 1210. The Third Circuit affirmed, noting that the Section 301 and 303 claims alleged identical damages and "[a]lthough Bechtel has the right to prosecute" both its Section 301 and Section 303 claims, "Bechtel cannot recover damages more than once." *Id.* at 1215. The Court further noted "[i]f Bechtel should prevail in the arbitration of its section 301 claim for breach of contract and be awarded the damages it claims, Bechtel should have no further claim against the union under section 303. We do not know whether this will in fact occur but the possibility is sufficient justification to warrant the stay." The same is true with respect to plaintiff's breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims, both of which seek to recover the same damages. If plaintiff obtains a full recovery from the Sun D&O Proceeding, he cannot seek to recover the same damages from Kirkland.

8

First American Title Ins. Co. v. MacLaren, 2012 WL 769601, at *4 (D. Del. Mar. 9, 2012) is likewise instructive. In that case, First American Title Insurance Company filed an action in federal court against MacLaren, L.L.C., seeking declaratory judgment pursuant to 28 U.S.C. § 2201, that it did not have a duty to defend MacLaren in a state court action regarding, *inter alia*, title to certain real estate. First American also sought reformation of the title insurance policy based on claims of mutual mistake or unilateral mistake. After the conclusion of discovery, MacLaren filed a motion for summary judgment regarding the duty to defend, and a motion to stay the remaining claims pending the resolution of the underlying state court action.

In ruling on the motion to stay, the Court considered each of the three factors: (1) simplification of issues (2) prejudice, and (3) whether discovery was complete and a trial date set. To begin, the court reviewed the complaint filed in the state court action and was persuaded that "questions of fact related to First American's reformation claim will be resolved in [the state court] proceeding." First American, 2012 WL 769601 at *6. Specifically, absent a stay, the state court and the federal court would both have to decide whether the deed conveying the property was the result of mutual or unilateral mistake. Accordingly, the court held "[i]n light of this factual overlap and the fact that the same issues will otherwise be tried in two fora, the court concludes that the interests of judicial efficiency and economcy would be served by staying this action pending the outcome of the underlying state court proceeding" and "the resolution of these factual disputes in the state court matter will serve to simplify the issues in question in this case, as well as ensure consistent rulings in both actions."

Similarly, absent a stay, the fact finder in the Sun D&O Proceeding *and* the fact finder in this case will both be charged with deciding whether Indalex was solvent at the time of the dividend. Not only could this result in inconsistent rulings (e.g., a finding of solvency in one

9

case but not the other), this would also require the estate, Kirkland, and the Court to expend significant resources conducting discovery and hiring experts regarding this issue that may ultimately be unnecessary. Because this work has already been done in the Sun D&O Proceeding and the question of Indalex's solvency is ripe for resolution in that case, this Court should stay this action pending a decision in the Sun D&O Proceeding.

### B. A Stay Will Not Prejudice Plaintiff.

Plaintiff also will not be prejudiced if this action is stayed pending the conclusion of the Sun D&O Proceeding. In fact, a stay is in the best interest of the estate. If plaintiff succeeds in the Sun D&O Proceeding, he will have obtained his alleged damages without having to incur the additional expense in this case. On the other hand, if Sun Capital prevails, plaintiff's claims against Kirkland would be significantly more limited (e.g., Kirkland cannot be held liable for aiding and abetting a breach of fiduciary duty if there was no breach of fiduciary duty). In either case, the estate will avoid expenses that may not ultimately be necessary. Moreover, plaintiff will not be prejudiced by any delay that a stay may cause. As recognized in <u>Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.</u>, 2004 WL 1554382, *2 (D. Del. May 13, 2004), should plaintiff prevail in the Sun D&O Proceeding, he will be compensated for any delay he experiences by interest on any subsequent award. As such, plaintiff will not be prejudiced if this action is stayed pending the conclusion of the Sun D&O Proceeding. On the other hand, Kirkland will be prejudiced if a stay is not imposed. Failure to implement a stay fosters the risk of inconsistent judgments and exposes Kirkland to significant costs of further litigation (both in terms of time and money).

     **C.**    **Discovery Is Far From Complete And The Court Has Not Set A Trial Date.**

The final factor concerns whether discovery is complete and whether a trial date has been set. <u>First American</u>, 2012 WL 769601 at *4. Here, discovery is not complete nor has the Court set a trial date. A stay of this action until after the Sun D&O Proceeding is concluded will allow Kirkland and the estate to avoid significant, potentially unnecessary expenses associated with depositions, motions for summary judgment and possibly trial, many of which will be incurred prior to the hearing on plaintiff's motion to withdraw the reference in the Sun D&O Proceeding and all of which may prove unnecessary as a result of the outcome of the Sun D&O Proceeding. As such, Kirkland should not be subjected to further discovery until the Sun D&O Proceeding has concluded. Moreover, this Court should not permit plaintiff to have a second bite of the apple and try to bolster his solvency case through additional discovery that he chose not to pursue in the underlying case.

**V.**    **CONCLUSION**

This Court should exercise its inherent authority to control the disposition of this case to preserve judicial resources, avoid inconsistent findings, and avoid unnecessary expense. As such, Kirkland prays that this Court enter an order staying this action until, at a minimum, the fact finder in the Sun D&O Proceeding has determined whether Indalex was solvent when it declared the dividend.

Respectfully submitted,

FOX ROTHSCHILD LLP

*/s/ Seth A. Niederman*
Seth A. Niederman (No. 4588)
Maura L. Burke (No. 5313)
919 N. Market Street, Suite 1300
Wilmington, Delaware 19801-3045
Tel: (302) 654-7444/Fax: (302) 656-8920

and

Abraham C. Reich (admitted pro hac vice)
Peter C. Buckley (admitted pro hac vice)
2000 Market Street, Twentieth Floor
Philadelphia, Pennsylvania 19103-3222
Tel: (215) 299-2090/Fax: (215) 299-2150

Attorneys for Defendant,
Kirkland & Ellis LLP

Dated: March 10, 2014